# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-0464V**

STEVEN APPLEGET,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: August 28, 2026

*Diana Lynn Stadelnikas, Maglio Christopher & Toale, PA, Sarasota, FL, for Petitioner.*

*Elizabeth Andary, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On March 27, 2024, Steven Appleget filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine he received on September 23, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

"Motions Day" proceeding. For the reasons set forth below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $145,000.00, for his actual pain and suffering.

## I. Procedural History

On March 31, 2025, I issued a ruling on entitlement in favor of Petitioner. ECF No. 20. But the parties were unable to agree on an appropriate amount to award Petitioner for his pain and suffering, and agreed to brief the issue. ECF No. 25. On July 29, 2025, Petitioner filed his brief in support of damages ("Mot."), and Respondent filed a Response on September 12, 2025 ("Opp."). Petitioner filed a Reply ("Reply") on September 25, 2025. ECF Nos. 26-38. I heard arguments from both parties during a hearing held on August 21, 2026.

## II. Relevant Medical History

A complete recitation of the facts can be found in the Petition, declarations, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Mr. Appleget was 74 years old at the time he received a flu vaccine at the Carl T. Hayden Veterans Administration Medical Center ("VAMC") on November 10, 2021.[3] Ex. 2 at 235-36. His past medical history included lower back pain without neurological symptoms. Ex. 2 at 127.

On December 20, 2021, Mr. Appleget went to the emergency department ("ED") at the VAMC with complaints of bilateral foot paresthesias and weakness that had begun one day earlier, December 19, 2021. Ex. 2 at 94. He complained of unsteady gait while walking and standing. *Id*. On exam, he demonstrated paresthesias and ataxia. *Id*. After an extensive work-up, his differential diagnosis included posterior circulation stroke, GBS, "low suspicion for cauda equina or cord compression," and infection. *Id*. at 100. A neurologist was consulted and after reviewing Mr. Appleget's case, the physician did not believe that Petitioner had a stroke, but wanted to admit Mr. Appleget for possible GBS. *Id*. at 101. Mr. Appleget decided not to stay in the hospital but agreed that he would return if his symptoms worsened. *Id*.

The next morning, Mr. Appleget returned to the ED complaining that the decreased sensation had progressed to his waist. Ex. 2 at 80. His neurological exam was notable for reduced reflexes, decreased sensation to light touch, and unsteady gait. *Id*. at 81. Petitioner underwent a lumbar puncture, which revealed a normal protein level in his

[3] Petitioner also received the COVID 19 vaccination on December 15, 2021. Ex. 2 at 234.

cerebrospinal fluid. *Id*. at 43, 89. Mr. Appleget was admitted to the hospital with possible GBS. *Id*.

Mr. Appleget stayed in the hospital from December 22 to 25, 2021. Ex. 2 at 2, 89. While admitted, he received a five-day course of IVIG with pre-treatment with Tylenol and Benadryl. Ex. 2 at 3. Mr. Appleget was discharged with a principal diagnosis of GBS, and secondary diagnoses of hypertension, lower back pain, cataract, and a B12 deficiency. *Id*. His exam at discharge was remarkable for decreased sensation in his lower body, although he had full strength. *Id*. at 4. Petitioner's breathing remained stable while hospitalized. *Id*. at 3. His lab work revealed low Vitamin B12 levels, for which he received B12 supplements while admitted. *Id*. Petitioner continued taking Vitamin B12 1000mcg QD supplements at discharge with instructions for a repeat test of his serum level in one month. *Id*. He was also prescribed a Vitamin D supplement for the eight weeks following discharge. *Id*. Mr. Appleget was instructed to follow up with his PCP in one to two weeks after discharge. *Id*. He was discharged home on December 25, 2021, and was allowed to return to work immediately. *Id*. at 2, 6, 48.

On January 31, 2022, Mr. Appleget saw neurologist Gregory Lazarz, M.D., for a follow-up evaluation. Ex. 2 at 48. Petitioner reported that he had been "steadily improving" since being home from the hospital. *Id*. On exam, Mr. Appleget had full strength, full reflexes, and intact sensation, though he continued to struggle with his gait. *Id*. at 37. Dr. Lazarz diagnosed Petitioner with "AIDP Low-normal B12 levels." *Id*. at 48. He ordered a repeat test of Petitioner's B12 levels and an EMG. *Id*. at 48-49. He also instructed Mr. Appleget to continue his home exercises and to return in four months. *Id*. at 49.

Mr. Appleget underwent an EMG study on April 5, 2022. Ex. 2 at 26-27. It revealed "electrodiagnostic evidence of denervation of the left Tibial Anterior muscle which could signify a radiculopathy, but more testing would be needed." *Id*. However, it was "[o]therwise, a normal study," though it did "not exclude the possibility of nerve root irritation resulting in a pure sensory 'radiculitis' contributing to the patient's pain symptoms." *Id*.

From February 17 to May 26, 2022, Mr. Appleget had three encounters with Dr. Lazarz. Ex. 2. at 22, 30, 33. He reported that he was slowly improving throughout these visits, but he still had deficits with strength, gait, balance, and range of motion. *Id*. at 20, 22, 28-30, 32. Mr. Appleget continued to take B12 supplements through his February 17, 2022 encounter. *Id*. at 29. During his March 31, 2022 exam, Petitioner was able to move his legs without any limitation. *Id*. However, due to his continued deficits, Mr. Appleget's PCP referred him to physical therapy ("PT") on May 26, 2022. *Id*. at 20, 22.

Mr. Appleget saw Dr. Lazarz again on June 2, 2022. Ex. 2 at 17. Petitioner reported that his strength continued to improve, and he was using the elliptical and doing pushups at home, although he felt that his lower extremities fatigued easily. *Id*. On exam, Mr. Appleget demonstrated intact strength, sensation, coordination and reflexes. *Id*. at 18. Dr. Lazarz noted that Petitioner's MRI of his lumbar spine obtained in the hospital showed multiple areas of foraminal stenosis, which was more severe on the left side, but Petitioner did not show prominent asymmetry in strength, sensation, or radicular symptoms. *Id*. at 19. Dr. Lazarz also stated he wanted an update on Mr. Appleget's B12 levels. *Id*. Dr. Lazarz referred Petitioner for PT, occupational therapy, and a driver evaluation. *Id*.

From July 8 to September 29, 2022, Mr. Appleget had three PT sessions. Ex. 2 at 13, 20, 24. By the August 2022 visit, he reported steady progress but still with balance issues, bilateral leg weakness and ongoing pain in the bottoms of his feet. Additional home exercises were provided to improve his gait, balance and decrease his fall risk. Ex. 4 at 43. Dr. Duarte noted his recovery was going slowly and will take at least 12 months. Ex. 4 at 37. He continued with physical therapy sessions through September 2022, noting no pain but still off-balance and fatigue. He was discharged from formal PT sessions on September 29, 2022. Ex. 4 at 32.

At his September 24, 2023 visit with his PCP, Mr. Appleget reported that his lower extremity weakness continued to diminish, and he had not had a follow-up appointment with neurology since a year earlier. Ex. 5 at 13. His PCP advised him to follow up with neurology and agreed that no further rehabilitation was necessary for his GBS at that time. *Id*. at 15.

## III. The Parties' Arguments

### a. Petitioner

In his brief, Mr. Appleget explained that his GBS treatment included two emergency room visits, a five-day hospitalization over the Christmas holiday, multiple EMG/NCS, MRIs, five-day course of IVIG infusions, physical therapy, monthly visits to his neurologist and primary care physician for follow-up for almost two years and medical records continue to document paresthesias and left leg weakness (though improved). Mot. at 7. He argues that he was diagnosed with AMSAN, a more severe form of Guillain Barre Syndrome. *Id.* Additionally, Mr. Appleget also reports a level of high level of anxiety and emotional distress over his diagnosis and declining health, which impacted his ability to return to work. *Id*. Petitioner argues that based on the facts and circumstances of his case, including supportive case law, he is entitled to an award of $170,000.00 for his past pain and suffering.

Petitioner cited to eight cases in support of his pain and suffering request: (1) *Black v. Sec'y of Health & Human Servs.*, No. 21-2164V, 2024 WL 3467272 (Fed. Cl. Spec. Mstr. June 11, 2024) (awarding $140,000.00 in actual pain and suffering), (2) *Hinton v. Sec'y of Health & Human Servs.*, No. 16-1140V, 2022 WL 17957317 (Fed. Cl. Spec. Mstr. Nov. 29, 2022) (awarding $160,000.00 in pain and suffering), (3) *Fedewa v. Sec'y of Health & Human Servs.*, No. 17-1808V, 2020 WL 1915138 (Fed. Cl. Mar. 26, 2020) (awarding $180,000.00 in pain and suffering), (4) *Johnson v. Sec'y of Health & Human Servs*., No. 16-1356V, 2018 WL 5024012 at*8 (awarding $180,000.00 in pain and suffering), (5) *T.M. v. Sec'y of Health & Hum. Servs*., No. 19-119V, 2023 WL 355358 at*19 (Fed. Cl. Jan. 23, 2023) (awarding $180,000.00 in pain and suffering, (6) *Quirino v Sec'y of Health & Hum. Servs*., No. 17-989V, 2025 WL 407117 (Fed. Cl. Spec. Mstr. Jan. 8, 2025) (awarding $130,000.00 in pain and suffering), (7) *Gross v. Sec'y of Health & Hum. Servs*., No. 19-835V, 2021 WL 2666685 (Fed. Cl. Spec. Mstr. Mar. 11, 2021) (awarding $160,000.00 in pain and suffering), and (8) *Robinson v. Sec'y of Health & Hum. Servs*., No. 18-88V, 2020 WL 5820967 (Fed. Cl. Spec. Mstr. Aug. 27, 2020) (awarding $160,000.00 in pain and suffering).

**b. Respondent**

Respondent has argued that none of the cases cited by Petitioner to support his request of $170,000.00 "are comparable to the instant case because they involve substantially more treatment than this case or unique circumstances that resulted in a higher award." Opp. at 57. Respondent argues that there are GBS cases that involve milder and more limited severity and treatment, and that considering Mr. Appleget's "short disease course, limited treatment, and comparatively quick recovery," … he "should be awarded an amount within the range of other similarly mild and limited cases." *Id*.

In advocating for "an actual pain and suffering award of less than $170,000.00, consistent with the evidence of record and comparison to reasoned decisions awarding GBS damages," Respondent only cites to *Granville v. Sec'y of Health & Human Servs.*, No. 21-2098V, 2023 WL 6441388, at *1-2 (where petitioner was awarded $92,500.00 in pain and suffering). In arguing that *Granville* is an appropriate comparison, Respondent states that "[a] lesser award is appropriate in this case, given that the *Granville* petitioner spent more time in the hospital and underwent more PT than the present petitioner. Certainly, an award of less than $170,000.00 for actual pain and suffering is fair, reasonable, and appropriate compensation for petitioner's comparatively mild and limited injury." Opp. at 10.

## IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## V. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of his injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his GBS. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury, along with his own personal experiences in dealing with this condition.

In arriving at a pain and suffering award, I review the facts and circumstances of the petitioner before me, in the context of other cases and precedent. GBS is a particularly concerning and frightening condition, and the pain and suffering award for the injury should reflect that. Reasoned decisions, rather than cases resolved on proffer, provide the best comparable cases for arriving at an award when the parties are unable to resolve damages through negotiations. But ultimately the facts of the case at issue are the most significant factor.

Petitioner's medical records reveal a moderate case of GBS, with a treatment course that was not exceedingly intrusive compared to other cases. As the parties have articulated above, Mr. Appleget's treatment included a four-day hospitalization, which included five rounds of IVIG, and his records document a mild course, as he began to regain some of his his strength, albeit with strength and gait deficits, without receiving inpatient rehabilitation and could ambulate without assistance when discharged from the hospital. Ex. 2 at 2-6.

Following his discharge, Mr. Appleget was approved to return to work "immediately" and he participated in only three outpatient PT sessions in the six months after the onset of his injury. *Id*. at 13, 20, 24. By June 2, 2022, five and-a-half-months post-onset, Mr. Appleget was able to exercise on the elliptical and do push-ups, and he had intact strength, sensation, coordination, and reflexes. *Id*. at 17-18. During his last PT session on September 29, 2022, while the therapist noted that Mr. Appleget's strength was within normal limits, it was noted that Petitioner needed to be educated on exercises to improve his gait quality, balance and to decrease his fall risk. Ex. 4 at 35. Mr. Appleget continued to follow up with his PCP through September 2023, 22 months after his vaccination, at which time his PCP recommended that he return for follow up with his neurologist, although there are no additional records indicating that Petitioner did so.

While it was suspected that Mr. Appleget suffered from a GBS axonal variant, acute motor sensory axonal neuropathy ("AMSAN" - a more severe form of GBS), his treatment court was conservative, limited, and did not necessitate intensive intervention. Mr. Appleget's overall prognosis and recovery was good.

Petitioner cited eight cases in his brief, with pain and suffering awards ranging from $130,000.00 to $180,000.00. Mot. at 7-13. Overall, while these comparable cases were more helpful to my determination, as Respondent did not propose a specific award and only offered one case to support an award "less than $170,000.00", I still found the awards in these cases to be too high, as most are older decisions decided outside of the SPU context, and involved petitioners that received much more treatment for their GBS than Mr. Appleget. For those reasons, I do not find that Petitioner has adequately substantiated his request for $170,000.00. He has not described a uniquely traumatic initial course or extensive rehabilitation, although I will note that his active treatment course spanned nearly two years.

At the same time, Respondent has not proposed *any* specific award for Mr. Appleget's pain and suffering, which is simultaneously unhelpful to a decision maker and fails to identify what award Respondent actually considers reasonable. Respondent cited only one reasoned opinion, *Granville* (awarding $92,500.00). However, as I stated during the hearing, the Granville case is an outlier compared to the many other reasoned GBS cases that have been issued in the SPU context. Even compared to the *Granville* petitioner, Mr. Appleget was hospitalized for two additional days; his GBS recovery was supervised by a neurology specialists for several more months; and he presented better evidence of GBS residuals, compared to the *Granville* petitioner who conceded the fact of her full recovery, *Granville*, 2023 WL 64413388, at *3.

I find that Mr. Appleget's GBS pain and suffering was more similar to that of claimants from several recent cases (not cited by either party), including *Paveglio v. Sec'y of Health & Hum. Servs.,* No. 23-0739V, 2025 WL 1326313 (Fed. Cl. Spec. Mstr. Apr. 3, 2025))(awarding $145,000.00) – a matter which also featured a retiree who endured a relatively straightforward and short hospital course, one round of IVIg with improvement, and no inpatient rehabilitation, *Michaud v. Sec'y of Health & Hum. Servs.,* No. 22-134V, 2025 WL 777452, at *5 (Fed. Cl. Jan. 30, 2025) (petitioner was awarded $138,000.00, for a moderate case of GBS), *Glover v. Sec'y of Health & Hum. Servs.*, No. 23-0406V, 2025 WL 2092128, at *6 (Fed. Cl. June 23, 2025) (petitioner was awarded $145,000.00, for a *moderate* case of GBS), and *Flanagan v. Sec'y of Health & Hum. Servs.*, No. 23-0328V, 2025 WL 3527068, at *7 (Fed. Cl. Oct. 31, 2025) (where petitioner was awarded $135,000.00, for a *mild* case of GBS).

After considering the entire record and the parties' arguments, I find that **$145,000.00 in compensation for actual pain and suffering** is reasonable and appropriate in this case.

## CONCLUSION

For all of the above reasons, the I award **Petitioner a lump sum payment of $145,000.00, for Petitioner's actual pain and suffering to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.